DAVID F. WHELAN & others *vs.* TOWN OF HINGHAM
& others.

Plymouth.    January 6, 1965. — January 29, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, & SPIEGEL, JJ.

*Municipal Corporations,* Officers and agents, Municipal finance.

A town might properly expend money to reimburse two members of its
board of assessors for legal expense incurred by them in a successful
defence of an action of libel arising out of a letter by them published
in newspapers in reply to published letters by the third member of the
board criticizing their official action in certain matters.

PETITION filed in the Superior Court on October 1, 1963.
The suit was heard by *Good, J.*

*John H. Studley* for the petitioners.

*James P. Lynch, Jr.* (*Charles R. Parrott* with him) for
the respondents.

SPIEGEL, J.    This is a petition brought by ten taxable in-
habitants of the town of Hingham (town) to restrain an
alleged unlawful expenditure by the town.    The parties
filed a "Stipulation as to Certain Facts," and the trial
judge made a "Report of Findings, Rulings and Order."
The petitioners appeal from a final decree dismissing the
petition.

The material facts do not appear to be in dispute.    In
1962 John B. Clapp, Theodore M. Prudden and David F.
Whelan were members of the board of assessors (board) of
the town.    There was a disagreement among the members
concerning the refusal of a majority of the board (Clapp
and Prudden) to reëmploy one Herbert Adams, a profes-
sional appraiser, at the end of his term of employment.    On
or about January 30, 1962, Whelan (a petitioner in this
case) wrote a letter, signed by him as a member of the
board, to the Hingham Journal, a newspaper in the town,
and sent a copy of this letter to another newspaper, the

Quincy Patriot Ledger. This letter was "complimentary" to Adams and "critical" of Clapp and Prudden. On February 1, 1962, the Hingham Journal published the letter and on the same date the Quincy Patriot Ledger published the letter "in the form of a news story." In March, 1962, Whelan sent another letter to the Hingham Journal (which was also published in that newspaper) stating that the "other members" of the board had shown "a complete lack of sound judgment" in connection with the appraisal of a "so-called shipyard" in the town. After these letters had been published Clapp and Prudden "received inquiries from certain citizens of the Town inquiring as to their position on these matters."

Thereafter Clapp and Prudden wrote a letter (signed by them as chairman and clerk, respectively) to each of the aforementioned newspapers stating their views "as to the operation of the [a]ssessors' office and . . . critical of Whelan." This letter was published on or about March 22, 1962. On May 18, 1962, Adams brought an action of tort for libel against Clapp and Prudden, alleging that parts of the Clapp and Prudden letter referring to him were defamatory. At the commencement of the tort action Clapp and Prudden requested the board of selectmen to furnish them with legal counsel. The selectmen refused their request, and Clapp and Prudden individually retained their own counsel. The tort action terminated favorably to Clapp and Prudden. (See *Adams* v. *Clapp,* 346 Mass. 245.) On September 30, 1963, the town voted to reimburse Clapp and Prudden for the legal expenses incurred by each of them in defending the action for libel.

In the instant case the trial judge ruled that the "costs and expenses incurred" by Clapp and Prudden were "in connection with their official action as members of the Board of Assessors," and that the "contemplated expenditure by the Town . . . is permitted by the laws of this Commonwealth." We agree.

It is well established that "towns and cities have power to raise money to indemnify their officers and agents against

liabilities incurred or damages sustained in the *bona fide* discharge of their duties. . . . But the subject must be one concerning which they have a duty to perform, an interest to protect, or a right to defend." *Lawrence* v. *McAlvin,* 109 Mass. 311, 312. See *Hixon* v. *Sharon,* 190 Mass. 347; *Leonard* v. *Middleborough,* 198 Mass. 221. We are convinced that the subject matters involved in the case at bar were of "legitimate public interest." The acts of Clapp and Prudden "as public officeholders . . . [were] publicly challenged [and they] were entitled to express their views on these matters which were within their special knowledge and responsibility." *Adams* v. *Clapp, supra,* 248–249.

"The responsibility of public officers is to their constituents and the latter are entitled to know the reasons for official acts in order to judge whether the officers in question continue to deserve public confidence and support. The interest of the town in the matter clearly appears." *Maitland* v. *Thompson,* 129 Conn. 186, 192. See, generally, 25 Col. L. Rev. 241–242. To hold that the contemplated expenditure is not permitted would, in effect, impose a rule of silence on public officials in situations like the one before us; a result which, in our view, is contrary to the public interest.

*Decree affirmed.*