IN accordance with the St. of 1873, *c.* 40, providing that " the number of Associate Justices of the Supreme Judicial Court shall be six instead of five," WILLIAM C. ENDICOTT, Esquire, of Salem was appointed a justice of this court on the fifth day of March, 1873, and took his seat upon the bench on the eleventh day of the same month.

---

## NORFOLK COUNTY.

WILLIAM MINOT, JR. & others *vs.* INHABITANTS OF WEST
ROXBURY.

A town cannot raise by taxation or by pledge of its credit, or pay from its treasury, money for the expenses of a committee directed by a vote of the town to petition the legislature for the annexation of the town to another town.

PETITION of ten persons representing that they were all taxable inhabitants of the town of West Roxbury; that on the 18th of November, 1872, a town meeting of the town was held in pursuance of a warrant issued by the selectmen therefor, which warrant contained, among others, the following article · " To see if the town will appoint a committee to petition the legislature, at its next session, for the passage of an act authorizing the annexation of the town of West Roxbury to the city of Boston, and to make an appropriation therefor."

That this article came up for consideration in the course of the meeting, and thereupon the following votes were separately passed by a majority of the voters then present: " Voted," that certain persons who were named " be, and they are hereby appointed a committee to petition the legislature, at its next session, for the passage of an act authorizing the annexation of the town of West Roxbury to the city of Boston, and said committee are hereby authorized to appear, with counsel, before any committee of the legislature to whom said petition may be referred, and favor the granting of said petition."

" Voted, that for the purpose above named, the sum of $5000 is hereby appropriated, and the treasurer, under the direction of the selectmen, is hereby authorized to borrow the same."

The petition then alleged that the petitioners had no accurate or exact information as to the action of this committee, or what, if any steps had been taken by it under the votes, or whether the sum of $5000 pretended to be appropriated, or any part of it, had been raised by pledging the credit of the town, or otherwise, but that they were informed and believed that none of it had been paid out by said town or by its treasurer; that they were informed and believed that the treasurer of the town deemed himself bound by these votes, and authorized to act under them, and intended and was preparing to pay out of the town treasury the whole or a part of the sum voted.

The petition then averred that the votes were illegal; that the town had no legal right to raise, appropriate or pay over money for the objects named in the votes, and prayed that the treasurer of the town be enjoined from taking any action under the votes.

To this petition the defendant demurred because the petitioners had not stated a case which entitled them to any relief.

The case was heard and reserved by *Chapman*, C. J., for the consideration and decision of the full court, on bill and demurrer.

*G. O. Shattuck & R. M. Morse, Jr.*, for the defendants.

*R. Olney & W. Minot*, 3d, for the petitioners.

ENDICOTT, J. The single question, presented for decision in this case, is whether a town has the legal right and power to raise by taxation or pledge of its credit, or to pay from its treasury any money for the expenses of a committee directed by a vote of the town to petition the legislature for the annexation of the town to the city of Boston, and to appear with counsel to advocate the annexation.

It is well settled by our decisions, that towns derive all their authority to tax their inhabitants from the statutes; if the authority to tax for a particular purpose is not found there, either in express terms or by necessary implication, it does not exist. If it is to be found, the action of the town in such case is binding and conclusive; and whether the town acted wisely and with proper discretion is not a subject of investigation or revision by this court. It is not necessary to cite all the authorities to this proposition; the earliest and the latest cases lay down this rule. *Stetson* v. *Kempton*, 13 Mass. 272. *Friend* v. *Gilbert*, 108 Mass. 408. *Higginson* v. *Nahant*, 11 Allen, 530.

It is not contended by the defendants that the power to tax its inhabitants for such a purpose is specifically given or comes within any of the objects enumerated in the statutes for which towns have authority to raise money. But it is argued, that the annexation of a town to a city is a matter nearly affecting the rights of a town, that it relates to and involves questions of municipal concern, that a town has a right to petition the legislature for such a purpose, and that the expenses attending such application fall properly within the final clause of that section of the statute authorizing towns to raise money " for all necessary charges arising therein." Gen. St. *c.* 18, § 10.

"Necessary charges" are not confined to the objects specifically enumerated in § 10, but must include the necessary charges arising from the exercise of any power conferred, or duty imposed on towns by other provisions of the General Statutes or subsequent statutes. This case not being provided for in the statutes, it becomes necessary to consider, whether the power to tax for this purpose, as for a necessary charge arising within the town, can be inferred or deduced from any power given or duty imposed on towns, or can be said to come within the general scope of the objects and purposes for which towns are incorporated.

This clause has received judicial interpretation in a series of well considered cases. The leading case is *Stetson* v. *Kempton, supra.* The meaning of the word "necessary" in the statute is discussed at length by Chief Justice Parker, with a fulness of illustration in regard to the various expenses which may be said to fall within the words "necessary charges," that seems to exhaust the subject, and has not been materially enlarged by later decisions. He says: "The phrase 'necessary charges' is indeed general; but the very generality of the expression shows that it must have a reasonable limitation. For none will suppose that under this form of expression every tax would be legal which the town should choose to sanction. The proper construction of the term must be that in addition to the money to be raised for the poor, schools, &c., towns might raise such sums as should be necessary to meet the ordinary expenses of the year; such as the payment of such municipal officers as they should be obliged to employ, the support and defence of such actions as they might be parties to, and the expenses they would incur in performing such duties as the laws imposed, as the erection of powder houses, providing ammunition, making and repairing highways and town roads, and other things of a like nature, which are necessary charges because the effect of a legal discharge of their corporate duty. The erection of public buildings for the accommodation of the inhabitants, such as town houses to assemble in, and market houses for the sale of provisions, may also be a proper town charge, and may come within the fair meaning of the term *necessary;* for these

may be essential to the comfort and convenience of the citizens.
. . . With respect to the defence of any town against the incur-
sions of an enemy in time of war, it is difficult to see any prin-
ciple upon which that can become a necessary town charge. It
is not a corporate duty," &c. In another case in the same volume,
*Rumford School District* v. *Wood*, 13 Mass. 193, the chief justice
said of towns that they may be considered as *quasi* corporations,
with limited powers coextensive with the duties imposed on them
by statute or usages. The rule of construction laid down in these
early cases has been strictly followed in the later decisions. In
*Parsons* v. *Goshen*, 11 Pick. 396, Mr. Justice Wilde says, " The
important question in this case is settled, and upon principles
that cannot be controverted, in *Stetson* v. *Kempton*." In *Anthony*
v. *Adams*, 1 Met. 284, Chief Justice Shaw said : " It is now well
settled that a town in its corporate capacity will not be bound,
even by an express vote of a majority, to the performance of
contracts or other legal duties not coming within the scope of the
objects and purposes for which they are incorporated." In *Vin-
cent* v. *Nantucket*, 12 Cush. 103, it was said by Mr. Justice Mer-
rick, " Their contracts will be valid when made in relation to ob-
jects concerning which they have a duty to perform, an interest
to protect, or a right to defend. But here is the extent at once
of their right and their power. They cannot engage in enter-
prises foreign to the purposes for which they were incorporated,
nor assume responsibilities which involve undertakings not within
the compass of their corporate powers."

Following this rule of construction, this court has held ex-
penditures to be legal, though not within the express terms of
the statutes, but incidental to and within the scope of the powers
of a town ; as for the erection of market and town houses, and
the construction of reservoirs to supply fire engines ; *Spaulding*
v. *Lowell*, 23 Pick. 71 ; *French* v. *Quincy*, 3 Allen, 9 ; *Hardy* v.
*Waltham*, 3 Met. 163 ; for the support of a public clock, as within
the jurisdiction of a town in the same manner as hay scales,
burying grounds, wells and reservoirs, being objects of conven-
ience and necessity to the inhabitants. *Willard* v. *Newburyport*,
12 Pick. 227. A town may also indemnify its officers against

liabilities incurred in the *bonâ fide* discharge of their official duties, as in regard to the reassessment of taxes, the repairs of a highway, the report of a school committee, the erection of a town house, all incidental to and connected with the exercise of the powers of a town ; *Nelson* v. *Milford*, 7 Pick. 18 ; *Bancroft* v. *Lynnfield*, 18 Pick. 568 ; *Fuller* v. *Groton*, 11 Gray, 340 ; *Hadsell* v. *Hancock*, 3 Gray, 526 ; *Babbitt* v. *Savoy*, 3 Cush. 530 ; and may pay for professional services in the defence of suits, independent of the result of the suit, and whether the town acted legally or illegally in the matter in controversy, it being in the ordinary administration of town affairs. *Cushing* v. *Stoughton*, 6 Cush. 389.

It is not important to cite the numerous cases in which votes of towns have been declared illegal and void by this court, as none of them turn on the special construction of these words in the statute, or in any way modify or change the rule of construction previously stated.

We are therefore brought directly to the question whether this vote of the town of West Roxbury was an abuse of legal right and power. Upon a review of the authorities, and upon principle, it is very clear, that towns, deriving all their power to raise money and tax their inhabitants from the statutes, must necessarily be confined in their expenditures of money, and the consequent power to tax their inhabitants therefor, to the objects and purposes named in the statutes, and to those other objects and purposes not named, but so connected with and incidental to the objects named, and so directly within the line of their corporate duty and power in the ordinary administrations of their affairs as towns, that they may be fairly presumed, by necessary implication, to be included in the words " other necessary charges." Such incidental power must spring from some power granted in terms, and relate to a subject matter set forth with distinctness in some portion of the statutes, and which is in some way necessary for the town to do in carrying out and performing its corporate duties, as an existing body politic. Else it has no power to tax its inhabitants, for the principle of a tax is that it is necessary by reason of a public duty in the town to do something in obedience to and imposed by public law.

It is difficult, therefore, to see how annexation to another municipal corporation, involving the merger of its organization in another, and the abrogation of all the functions and duties to perform which it was created, can be a matter within the scope of its powers, or incidental to any of its legal duties, or in regard to which, or for the promotion of which, it has any corporate duty to perform, incidental to any power conferred. It is not in defence of any municipal right, or in the performance of any municipal duty granted or imposed by law, or to protect any interest committed to its charge; it is simply an aggressive movement against its own existence. As it exists for a definite purpose, as a municipal corporation, its powers all lie within the sphere of its municipal duties.

It was urged in argument that the annexation of a town to a city was a matter affecting the rights of a town, and was of municipal concern as affecting the roads, the poor, water supply, &c., and so the town could take action thereon. Because annexation may cause a change in the local administration of affairs, it does not follow that the town as a corporation can have any interest therein. The only action the town can take in regard to such matters of municipal concern is by dealing with them itself, not by thrusting them on other corporations, and taxing its citizens for the expenses thereby incurred. The people of a town may be interested in, and their municipal affairs may be affected by, the building of a railroad or the establishment of a manufacturing corporation within their town limits; but the town in its corporate capacity would have no right, without special legislative authority, to tax their inhabitants to promote such undertakings, whatever the advantage in local prosperity which would result. It was also argued that this vote might rest on the ground of usage. No such usage appears of which we can take notice. But usage could not sanction such an appropriation of money; for usage, to be binding, must be not only general, reasonable and long continued, but must also be a custom connected with the exercise of some corporate power or the enjoyment of some corporate right, or which contributes essentially to the convenience or necessities of the inhabitants. *Hood* v. *Lynn*, 1 Allen, 103, 106.

Nor does the want of power to tax the inhabitants of a town for such a purpose as is contemplated by this vote affect the right of petition; or impair or prevent the right of the people to assemble in an orderly manner to consult upon the public good, and to request of the legislative body by the way of petition a redress of wrongs done them and of the grievances they suffer. Declaration of Rights, art. 19.

This the inhabitants of West Roxbury have the right to do, and to ask for any changes in the laws which they think necessary or desirable. But it does not follow that such action would be in the nature of corporate action by the town, or that it would necessarily involve the expenditure of money; and it certainly does not follow that it is a purpose for which the town can raise money in the absence of any statute provisions.

We are therefore of opinion that the vote was an abuse of legal right and power, and the entry must be *Demurrer overruled.*